ams

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 10-40077-02-JAR |
| | ) |
| **BRENDA G. BECKER,** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

## MEMORANDUM AND ORDER

The Indictment in this matter charges defendant, along with co-defendant Scott Becker, her husband, with conspiracy to obstruct justice, perjury, wire fraud, and money laundering. The Indictment further charges defendant with perjury, wire fraud, and money laundering and contains a forfeiture allegation. This case was recently reassigned to the undersigned and has not yet been set for trial. Before the Court is the government's Motion to Disqualify Counsel (Doc. 41), and defendant's Motion for Evidentiary Hearing and for Discovery (Doc. 67). The Court conducted a hearing on the motion to disqualify on December 20, 2010, during which the Court heard oral argument on the motion to disqualify. The parties each submitted evidence as attachments to the briefs on that motion and defendant submits further evidence along with her post-hearing brief. The Court has considered the filings and the arguments made by the parties at the December 20 hearing and is prepared to rule. As described more fully below, the Court denies the government's motion without prejudice, denies as moot defendant's request for a further evidentiary hearing, and denies without prejudice defendant's motion for discovery.

**I.      Background**

On February 18, 2009, the Indictment against Scott Becker was filed in Case No. 09-40008-JAR.  This Court held multiple evidentiary hearings on the issue of pretrial detention of Mr. Becker and ultimately decided to detain him based on evidence that suggested he posed a risk of flight.  The government argued in favor of pretrial detention on the basis that the Beckers concealed material information from the probation officer in Florida, where Mr. Becker was arrested, that Mr. Becker systematically liquidated his assets and transferred them to charity or to corporations controlled by his wife and daughter or offshore, and that he intended to flee this jurisdiction prior to arrest by sailing to various tax havens in the Caribbean on a boat that the couple owned that was located in Florida.  After weighing all of the evidence, the Court ruled that it was unable to find that there is a condition or combination of conditions that would reasonably assure the appearance of Mr. Becker as required, and ordered him detained pending trial.

Ultimately, the Court was persuaded to release Mr. Becker under a number of conditions on April 5, 2010.  In August 2010, the government again moved to detain Mr. Becker, based on evidence that Mr. Becker was holding an auction on his property that was not properly disclosed to his pretrial services officer.  The Court conducted a hearing on August 18, 2010, where it was disclosed, amongst other evidence, that the boat that was at issue during Mr. Becker's initial detention hearings was once again in the custody and control of Ms. Becker, rather than the brokerage company that had previously taken possession of the boat, and that the boat had been moved to Belize.  The Court temporarily detained Mr. Becker, pending its decision on the government's motion.  Two days later, Mr. Becker voluntarily surrendered, rendering the

government's motion moot.

In February 2010, counsel Cheryl Pilate entered her appearance on behalf of Ms. Becker in Case No. 09-40008-JAR as an interested party, for the purpose of moving to strike the lis pendens filed by the government on certain property for which Ms. Becker claimed an ownership interest. Ms. Pilate and Ms. Becker attended the August 18, 2010 hearing on the government's motion to reconsider the Court's decision to release Mr. Becker. During that hearing, the government called Ms. Becker as a witness and she invoked her Fifth Amendment right to remain silent. Ms. Pilate appeared on Ms. Becker's behalf and informed the Court that she had "learned a great deal today that I was not aware of . . . certainly about the history of this case." She indicated she could be more effective in the future "because, frankly, that wasn't originally my role and there were many things that as a result of being at this hearing that I've learned."[1]

Beginning on August 20, 2010, two days after the hearing, AUSA Hathaway emailed Ms. Pilate and Mr. Becker's counsel, Ron Wurtz, explaining that a new indictment would be presented to the grand jury "in September" for conspiracy, wire fraud, false statement, and perjury. The government provided the parties with circumstances upon which it would consider resolving "all criminal matters involving the Beckers." One such circumstance was that Ms. Becker plead guilty to a misprision of a felony by waiving indictment and pleading to an information. Mr. Hathaway and Ms. Pilate exchanged a number of emails on this subject between August 20 and August 31, 2010, some but not all of which were copied to other parties such as Mr. Wurtz, other government attorneys, and FBI agents. On August 31, 2010, Ms. Pilate informed Mr. Hathaway by email that her client had "authorized her to discuss a misprision plea

---

[1]Case No. 09-40008-01-JAR, Doc. 178 at 124–25.

with you and is willing to cooperate in the surrender of the property." Mr. Hathaway responded: "We are tied up with GJ all day tomorrow. Any action taken by the GJ against the Beckers we will ask to be placed under seal. Because of your remarkable candor we will work with you to resolve matters pending." This email was copied to government co-counsel Christine Kenney.

Within hours of sending Ms. Pilate the email regarding the following day's grand jury session, Mr. Hathaway sent Ms. Pilate another email stating that "the FBI has received information that Brenda is going to board a flight from Houston to Venezuela tonight. If this is pure fiction I apologize. Otherwise, tell Brenda that there will be agents waiting[] for her at the gate!" The government also learned that Ms. Becker had received cashier's checks totaling $69,641.32 from the sale of personal property at auction that was the subject of the August 18, 2010 hearing.

The grand jury returned an Indictment against the Beckers in this case on September 1, 2010. According to emails attached to the motion to disqualify, it was determined that Ms. Becker had traveled to Houston and she ultimately voluntarily returned to Kansas and self-surrendered on September 3, 2010, delivering the two cashiers checks to the United States Attorneys Office. Ms. Pilate entered her appearance on behalf of Ms. Becker and is not presently appointed under the Criminal Justice Act.[2]

**II.    Discussion**

The government moves to disqualify Ms. Pilate in this matter based on an actual or potential conflict of interest under the Kansas Rule of Professional Conduct ("KRPC") 3.7 and "unsworn witness" problems. The government contends that Ms. Pilate is a material witness

---

[2]A motion to appoint counsel is pending and is the subject of a subsequent forthcoming order.

with regard to two facts: (1) Ms. Pilate told Ms. Becker that federal charges were imminent at the end of August 2010, allegedly causing Ms. Becker to attempt to flee; and (2) Ms. Pilate learned for the first time about many of the matters presented at the August 18, 2010 evidentiary hearing in Case No. 09-40008 that implicated her client and led to the charges in the underlying case.[3]

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal prosecution the right to counsel.[4] This right "commands, not that a trial be fair, but that a particular guarantee of fairness be provided-to wit, that the accused be defended by the counsel he believes to be best."[5] Additionally, this "right to effective assistance of counsel contemplates the right to conflict-free representation."[6] "[W]hile the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[7] There is a "presumption in favor of petitioner's counsel of choice," but that presumption "may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential

---

[3] While the government has argued in its briefs that the crime-fraud exception to the attorney-client privilege applies to the emails at issue because they involve communications about an ongoing crime, it has presented no evidence to suggest that Ms. Pilate was aware of Ms. Becker's plans to flee. In fact, the emails clearly reflect her surprise at this news. There is no evidence before the Court to suggest that Ms. Pilate was a witness or participant in an ongoing crime.

[4] U.S. Const. amend. VI.

[5] *United States v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006).

[6] *Martinez v. Zavaras*, 330 F.3d 1259, 1262 (10th Cir. 2003) (citing *Holloway v. Arkansas*, 435 U.S. 475, 483–84 (1978)).

[7] *United States v. Wheat*, 486 U.S. 153, 159 (1988).

for conflict."[8]

The Supreme Court has recognized that a district court

> must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.[9]

Thus, the Supreme Court has given district courts "substantial latitude in refusing waivers of conflicts of interest" in favor of disqualification in cases where a potential conflict may exist.[10]

The standards for conduct of attorneys in this Court are the KRPC, as adopted by the Supreme Court of Kansas.[11] Rule 3.7 prohibits a lawyer from acting as an advocate at a trial in which the lawyer is likely to be a necessary witness:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
> (1) the testimony relates to an uncontested issue;
>
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
> (3) disqualification of the lawyer would work substantial hardship on the client.

Under Kansas law, the necessary witness standard in Rule 3.7(a) "'requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can be

---

[8]*Id.* at 164; *see also United States v. Evanson*, 584 F.3d 904, 909–10 (10th Cir. 2009).

[9]*Id.* at 162–63.

[10]*Id.* at 163.

[11]D. Kan. Rule 83.6.1.

determined that no other witness could testify, and obviates disqualification if the lawyer's testimony is merely cumulative.'"[12] However, the Tenth Circuit has explained that this requirement does not bind a district court when determining whether disqualification is appropriate because "the Sixth Amendment does not require a strict violation of an applicable ethical rule" and the presumption in favor of defendant's counsel of choice may be overcome not only by a showing of an actual conflict, but also by a "showing of a serious potential for conflict."[13]

In addition to Rule 3.7, the government contends that there is a conflict of interest because Ms. Pilate is an unsworn witness. The Second Circuit has explained the unsworn witness problem as follows:

> An attorney acts as an unsworn witness when his relationship to his client results in his having first-hand knowledge of the events presented at trial. If the attorney is in a position to be a witness, ethical codes may require him to withdraw his representation.
> Even if the attorney is not called, however, he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.[14]

The Court evaluates whether the government has established a conflict of interest under either Rule 3.7 or as an unsworn witness.

---

[12]*Id.* (quoting ABA/BNA Lawyer's Manual on Prof. Conduct § 61.507).

[13]*Evanson*, 584 F.3d at 910.

[14]*United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993) (citations omitted) (adopted by the Tenth Circuit in *Evanson*, 584 F.3d at 910).

The Court first addresses the government's contention that Ms. Pilate has a conflict of interest based on her statements and observations at the August 18, 2010 evidentiary hearing in Case No. 09-40008-JAR. The government points to certain facts presented at that hearing, which became the basis for the instant Indictment, and argues that Ms. Pilate is a potential witness to the presentation of these facts and to her client's invocation of the Fifth Amendment. The Court finds no actual or potential conflict of interest on this basis. The facts to which the government refers were presented in open court; a transcript has been prepared of this hearing. Under the government's logic, the court reporter and government attorneys are potential witnesses to what transpired at that hearing. There is no "serious potential" that Ms. Pilate would be required to testify about what transpired at this hearing. Further, the Court does not find that Ms. Pilate is an unsworn witness on this point. The Court foresees no arguments that Ms. Pilate would be constrained from making, given her appearance at the August 18, 2010 hearing. Nor would Ms. Pilate "subtly impart to the jury his first-hand knowledge of events," any more than any other person in the courtroom who was present during that hearing.

The government's primary argument is that Ms. Pilate is a potential witness to Ms. Becker's knowledge that the grand jury would convene on September 1, 2010 and likely return a sealed indictment against her, allegedly causing her to flee the jurisdiction. The government contends in the attached emails, in its briefs, and at oral argument that it became aware on August 31, 2010 that Ms. Becker either purchased or reserved plane tickets to Venezuela from Houston. Evidence of flight in close temporal proximity to significant events in the course of prosecution may be probative of a criminal defendant's guilt.[15] It is highly likely that the

---

[15]*United States v. Lacey*, 86 F.3d 956 F.3d 956, 973 (10th Cir. 1996); *United States v. Martinez*, 681 F.2d 1248, 1259 (10th Cir. 1982).

government will present evidence at Ms. Becker's trial that she fled to resist arrest on the indictment in this matter, after being advised of the impending indictment by her counsel. However, the Court does not find that Ms. Pilate is a necessary or potential witness for the prosecution in order to prove this allegation of flight.

Defendant asserted at the hearing, and again in her surreply, that she would stipulate to the foundation of the emails attached to the parties' briefs, rendering Ms. Pilate's testimony unnecessary. These emails show that: (1) the government communicated to defense counsel that an indictment was imminent in mid-August; (2) the government communicated to defense counsel on August 31 that the grand jury would be returning an indictment against defendant the following day; and (3) the government learned within hours after notifying Ms. Pilate about the grand jury return that defendant was attempting to flee the jurisdiction. The Court finds that this evidence is sufficient for the government to show evidence of flight.

The government contends that even if the emails are admitted into evidence, Ms. Pilate will be required to testify to the fact that she communicated to her client that the grand jury would be returning an indictment against her on September 1, 2010. The Court disagrees. First, the jury would be able to infer this fact based on the emails and any evidence the government presented about Ms. Becker's travel itinerary. Second, this evidence is clearly subject to the attorney-client privilege. The attorney-client privilege "protects 'confidential communications by a client to an attorney made in order to obtain legal assistance' from the attorney in his capacity as legal advisor."[16] The specific communication at issue was between Ms. Becker and her counsel and clearly made to obtain legal assistance. While the government contends in its

---

[16]*In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to "Custodian of Records, Ellison, Nelson & Kennedy," Attorneys*, 697 F.2d 277, 278 (10th Cir. 1983).

Reply brief that the privilege is waived because Ms. Pilate communicated "the information" to the government, there is no evidence in the record that Ms. Pilate communicated to the government that she told Ms. Becker that the grand jury would return an indictment the following day. Given that the government is able to produce the emails submitted to the Court, and potentially other non-privileged evidence of flight, the Court is unable to find a serious potential that Ms. Pilate's testimony would be required on this issue. The jury would be able to infer the fact that Ms. Pilate communicated this information to Ms. Becker without the need for Ms. Pilate's testimony.

The Court further finds that Ms. Pilate should not be disqualified as an unsworn witness on the issue of Ms. Becker's knowledge of the September 1, 2010 grand jury session. While Ms. Pilate of course has first-hand knowledge of the email correspondence in August 2010, and of her own conversations with Ms. Becker surrounding these events, it does not rise to the level of an "unsworn witness problem." In *Evanson*, the defendants were charged with operating a scheme to enable participants to cheat the government out of income-tax revenue. The government moved to disqualify one of the defendant's counsel based on his alleged involvement in the scheme. The government pointed to three documents written by the defendant that referenced his attorney in responding to inquiries from participants in the scheme. The documents suggested that the attorney was aware of the defendant's knowledge and intent to cover-up the transactions at issue, and that he may have approved of the defendant's actions.[17] The Tenth Circuit held that the district court could "reasonably anticipate that the letters would

---

[17] *Evanson*, 584 F.3d at 905–08.

be offered into evidence, and admitted, at trial."[18]  It further identified two competing potential responses by the defendant to the admission of the letters: (1) the defendant would mount an advice-of-counsel defense that would implicate his attorney; or (2) he would decline to assert a defense-of-counsel defense and attack his conviction based on ineffective assistance of counsel.[19]  The choice between these two unfortunate responses is an example of what the Supreme Court explained in *Wheat*: "this need to investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal."[20]

There is no such "whip-saw" effect in this case, nor is there an issue about whether the Court should accept a conflict waiver—the issue presented to the courts in *Evanson* and *Wheat*. In *Evanson*, the district court began with the premise that the evidence implicating the attorney would be admissible.  Here, while many of the emails submitted by the parties may be admissible, the particular communication (whether oral or written) by Ms. Pilate to Ms. Becker, informing her of the grand jury return, is a privileged communication and would not be admissible.  As such, there is no potential for Ms. Pilate to testify unless Ms. Becker waived the privilege.  Furthermore, there is no indication that Ms. Pilate experienced any events first-hand that would inhibit her ability to zealously advocate for her client, or make certain arguments on defendant's behalf.  While Ms. Pilate personally participated in the email correspondence with Mr. Hathaway, the Court believes that it will be able to sufficiently monitor the presentation of evidence at trial to ensure that neither counsel improperly "impart[s] to the jury . . . first-hand

---

[18]*Id.* at 913.

[19]*Id.*

[20]*United States v. Wheat*, 486 U.S. 153, 161 (1988).

11

knowledge of events."[21]

For all of these reasons, the Court finds, based on the evidence and argument presented at this time, that a stipulation as to the foundation of the emails, coupled with the Court monitoring the presentation of this evidence, will sufficiently ensure against a conflict of interest in this matter, either actual or potential. Given this ruling, defendant's request for a further hearing is denied as moot. The Court expects that this ruling should also render moot the government's stated objection to defendant's discovery request and will therefore deny defendant's motion without prejudice to refiling.

**IT IS THEREFORE ORDERED BY THE COURT** that the government's Motion to Disqualify Counsel (Doc. 41) is **denied**.

**IT IS FURTHER ORDERED** that defendant's Motion for Evidentiary Hearing (Doc. 67) is **denied as moot** and defendant's Motion for Discovery (Doc. 67) is **denied without prejudice** to refiling.

Dated: January 11, 2011

                                                        S/ Julie A. Robinson
                                                       JULIE A. ROBINSON
                                                       UNITED STATES DISTRICT JUDGE

---

[21] *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993).