# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 10-40077-02-JAR** |
| | ) | |
| **BRENDA G. BECKER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Before the Court are the following pretrial motions filed by defendant Brenda Becker: (1) Motion to Dismiss Case, or, Alternatively, for Other Sanctions Based on the Presentation of Misleading Information to the Court and Failure to Produce Relevant Discovery (Doc. 101), as supplemented (Doc. 126); (2) Motion for Discovery under *Brady v. Maryland*, Rule 16, The Jencks Act and for Grand Jury Transcripts (Doc. 103); and (3) Motion to Dismiss Counts Based on Insufficiency of the Indictment, Failure to State an Offense, and Collateral Estoppel (Doc. 104), as amended (Doc. 107). The government has responded to these motions and the defendant has filed a reply. The Court conducted a hearing on April 15, 2011, during which the Court heard oral argument and defendant presented evidence. The parties also submitted evidence as attachments to the briefs. The Court has considered the filings and the arguments made by the parties at the hearing and is prepared to rule. As described more fully below, the Court denies defendant's pretrial motions.

## I.    Background

On February 18, 2009, an Indictment against Scott Becker was filed in Case No.

09-40008-JAR.  The Indictment contained a Forfeiture Notice and Allegation pursuant to 18

U.S.C. § 982(a)(2)(A), for "any property, real or personal, which constitutes or is derived from

proceeds obtained directly or indirectly as a result of such violations, . . ."  The Indictment

further provided the defendant notice that it would be seeking substitute assets if necessary.[1]  On

April 1, 2009, the government filed a Bill of Particulars in Respect to the Forfeiture Notice &

Allegations (Doc. 24); and on August 6, 2009, the government filed a Bill of Particulars in

Respect to the Forfeiture Notice & Allegations First Supplemental (Doc. 77).  In both bills of

particular, the government provided "notice of its intention to seek to forfeit substitute assets,

including but not limited to the following tracts of real estate, . . ."

This Court held multiple evidentiary hearings on the issue of pretrial detention of Mr.

Becker and ultimately decided to detain him based on evidence that proved he posed a risk of

flight.  The government argued in favor of pretrial detention on the basis that Mr. Becker and his

wife, defendant Brenda Becker, concealed material information from the probation officer in

Florida (where Mr. Becker was arrested), that Mr. Becker systematically liquidated his assets

and transferred them to charity or to corporations controlled by his wife and daughter or

offshore, and that he intended to flee this jurisdiction prior to arrest by sailing to various tax

havens in the Caribbean on a boat that the couple owned that was located in Florida.  After

weighing all of the evidence, the Court ruled that it was unable to find that there is a condition or

combination of conditions that would reasonably assure the appearance of Mr. Becker as

---

[1](Doc. 1 ¶ 14B.)

required, and ordered him detained pending trial.

On February 11, 2010, Judge Sebelius issued an Order denying the government's motion to reconsider his decision to appoint counsel for Mr. Becker.[2]  In that Order, Judge Sebelius examined the same evidence considered by this Court at the detention hearings and found that there was insufficient evidence to establish that defendant hid assets or has the financial ability to retain counsel.  Judge Sebelius acknowledged that defendant's wife, Brenda Becker, has corporate ownership interests in various real estate holdings but that these are encumbered by *lis pendens*.

In February 2010, counsel Cheryl Pilate entered her appearance on behalf of Ms. Becker in Case No. 09-40008-JAR as an interested party, for the purpose of moving to strike the *lis pendens* filed by the government on certain property for which Ms. Becker claimed an ownership interest.  Ms. Becker's motion argued that the bills of particular operated as *lis pendens* notices and improperly restrained substitute assets under Tenth Circuit authority.  The Court agreed and, in accordance with *United States v. Jarvis*,[3] found that the government had no present property interest in the real estate itemized in the bills of particular and may not impose pretrial restraints upon that property.[4]

Ultimately, the Court was persuaded to release Mr. Becker under a number of conditions of release on April 5, 2010, including a pledge of the property that was previously encumbered by the government's *lis pendens*.  In August 2010, the government again moved to detain Mr.

---

[2](Doc. 106.)

[3]499 F.3d 1196, 1204 (10th Cir. 2007).

[4]*United States v. Becker*, Case No. 09-40008, Doc. 124 at 4–5 (Apr. 2, 2010).

Becker, based on evidence that Mr. Becker was holding an auction on his property that was not properly disclosed to his pretrial services officer. The Court conducted a hearing on August 18, 2010, where it was disclosed, amongst other evidence, that the boat that was at issue during Mr. Becker's initial detention hearings was in the custody and control of Ms. Becker, rather than the brokerage company that had previously taken possession of the boat, and that the boat had been moved to Belize. During that hearing, the government called Ms. Becker as a witness and she invoked her Fifth Amendment right to remain silent. The Court temporarily detained Mr. Becker, pending its decision on the government's motion. Two days later, Mr. Becker voluntarily surrendered, rendering the government's motion moot.

On August 20, 2010, two days after the hearing, AUSA Richard Hathaway emailed Ms. Pilate and Mr. Becker's counsel, Ron Wurtz, explaining that a new indictment would be presented to the Grand Jury "in September" for conspiracy, wire fraud, false statement, and perjury. The government provided the parties with circumstances upon which it would consider resolving "all criminal matters involving the Beckers." One such circumstance was that Ms. Becker plead guilty to misprision of a felony by waiving indictment and pleading to an information. Mr. Hathaway and Ms. Pilate exchanged a number of emails on this subject between August 20 and August 31, 2010. On August 31, 2010 at 5:52 p.m., Ms. Pilate informed Mr. Hathaway by email that her client had "authorized her to discuss a misprision plea with you and is willing to cooperate in the surrender of the property." Mr. Hathaway responded at 6:44 p.m.: "We are tied up with GJ all day tomorrow. Any action taken by the GJ against the Beckers we will ask to be placed under seal. Because of your remarkable candor we will work with you to resolve matters pending."

Within hours of sending Ms. Pilate the email regarding the following day's Grand Jury session, Mr. Hathaway sent Ms. Pilate another email, stating that "the FBI has received information that Brenda is going to board a flight from Houston to Venezuela tonight. If this is pure fiction I apologize. Otherwise, tell Brenda that there will be agents waiting[] for her at the gate!" The government also learned that Ms. Becker had received cashier's checks totaling $69,641.32 from the sale of personal property at auction that was the subject of the August 18, 2010 hearing. It was later determined that Ms. Becker had traveled to Houston, Texas; and she ultimately voluntarily returned to Kansas and self-surrendered on September 3, 2010, and turned over the two cashiers checks to the United States Attorneys Office.

The Grand Jury returned an Indictment against the Beckers in this case on September 1, 2010, alleging a scheme to defraud that is largely derived from the evidence presented at the detention hearings in Case No. 09-40008: that the Beckers committed perjury, and dissipated and concealed assets to avoid forfeiture and fines in that case and to obtain appointed counsel for Mr. Becker. The Indictment charges defendant Brenda Becker as follows: Count 1 for conspiracy to defraud the United States, the objects of which are (a) to interfere with and obstruct the administration of justice and punishing of offenders and the appointment of counsel for the indigent, (b) to commit perjury, (c) to commit wire fraud, and (d) to commit money laundering; Counts 2-4 for perjury; Counts 5-10 for wire fraud; and Counts 11-14 for money laundering. The Indictment also contains a forfeiture allegation. Ms. Pilate entered her appearance on behalf of Ms. Becker at the Initial Appearance. Defendant waived a detention hearing and remains in custody pending trial.

Beginning in November 2010, the parties pursued motions practice related to Ms. Pilate's

representation of defendant. Namely, Ms. Pilate sought to either obtain funds held by the government to retain private counsel or allow for appointment under the Criminal Justice Act, and the government filed a motion to disqualify Ms. Pilate. The government's motion was based on an actual or potential conflict of interest under the Kansas Rule of Professional Conduct ("KRPC") 3.7 and "unsworn witness" problems. In conjunction with this motion, the government issued a trial subpoena to Ms. Pilate, commanding her to bring along any communications between her and defendant referencing the Grand Jury investigation and defendant's travels in August and September 2010. The government contended that Ms. Pilate is a material witness with regard to the fact that Ms. Becker knew that federal charges were imminent at the end of August 2010, allegedly causing Ms. Becker to attempt to flee.

The Court heard oral argument on the motion to disqualify on December 20, 2010. During oral argument and later in arguing the instant motion for sanctions, Ms. Pilate characterized the government's motion as accusing her of unethical conduct. The Court told counsel at this hearing that it had heard nothing to suggest that counsel advised her client to flee the jurisdiction because an indictment was imminent. In a Memorandum and Order dated January 11, 2011, the Court denied the government's motion to disqualify. The Court found that, given the other evidence that would be presented at trial including a stipulation to the foundation of counsels' August 2010 emails, Ms. Pilate's testimony was not necessary in order for the jury to infer that defendant's alleged flight was in response to the knowledge that an indictment was imminent. The Court further found that Ms. Pilate's continued representation of defendant did not present an "unsworn witness" problem.

Also on January 11, 2011, the Court entered an Order ruling on defendant's motion for

extension of time to file pretrial motions and continue the trial setting. Based on a number reasons cited by defendant, the Court concluded that this was a complex case, as described in 18 U.S.C. § 3161(h)(7)(ii), and that the ends of justice served by continuing the jury trial until June 14, 2011 outweighs the interest of the public and the defendant in a speedy trial. Trial was continued to June 14, 2011. No further extension of this trial date has been sought or granted.

## II.    Discussion

### A.    *Motion for Sanctions*

Defendant moves for sanctions on the basis that the government presented misleading information to the Court and counsel and failed to produce discovery with regard to defendant's attempt to flee to Venezuela prior to the return of her Indictment on August 31, 2010. Defendant argues that recent discovery provided to her indicates that she never did purchase or reserve a seat on a flight to Venezuela, as the government had represented, and that her inquiry with the airline took place before Mr. Hathaway informed Ms. Pilate that the Grand Jury would be meeting the next day. The Continental Airlines record shows the words "RCVD-NO TKT PURCHASED" on "31AUG 1510." Defendant argues that this airline record proves that her attempt to purchase a ticket was unsuccessful and that this failed transaction occurred at 10:15 a.m. CDT, approximately eight hours prior to the government's message to defense counsel indicating that the Grand Jury would be meeting the next day.

In a supplement to the motion to dismiss filed on April 27, 2011, defendant brings to the Court's attention activities between counsel that arose after the April 15 hearing. According to defendant's motion, the government extended a plea offer on April 19, 2011. Ms. Pilate advised Mr. Hathaway that she would respond within the next day or two. On April 21, Ms. Pilate sent an email to Mr. Hathaway, advising that the defense was still considering the plea offer but

would not have a definite response until the following week when defendant's investigator, Mr. Denny Conway, would return from a personal vacation. The email advised, "We hope to visit on Monday or Tuesday and will give you a response then." The following day, the government responded, stating "this explanation is very troubling and is beyond bizarre. I do not intend to negotiate a settlement with Conway. The offer is hereby withdrawn."

Defendant asks the Court to impose sanctions based on its general supervisory power. Defendant seeks relief based on Mr. Hathaway's conduct in this case, which she alleges amounts to prosecutorial misconduct, suggesting the following alternative remedies: (1) dismissal, (2) reimbursement of her attorneys' fees and costs to the CJA fund, citing the 100 hours counsel was required to spend defending the motion to disqualify, (3) exclusion of any evidence concerning defendant's attempt to purchase an airline ticket to Venezuela because it is of nominal probative value and is highly prejudicial; or (4) disqualification of the prosecutor from further participation in this case.

The government responds that the evidence relied upon by defendant does not prove that defendant did not attempt to flee to Venezuela in anticipation of the Grand Jury returning charges against her. The government points to the series of emails in August between counsel as evidence that Ms. Pilate would have informed defendant that the Grand Jury was meeting in September and that the government's plea offer had an August, 30, 2010 deadline. The government states that it did not misrepresent or intend to misrepresent any facts to the Court or to counsel and that defendant's motion is simply an effort to exclude relevant evidence. The government argues that, at worst, it made the mistake of failing to understand the reference: "31AUG 1510" on the airline record, which is not sanctionable.

Defendant's motion is premised on the position that the government filed a motion to

disqualify Ms. Pilate in bad faith.  Defendant contends that the government made a series of misrepresentations both in writing and orally that it either knew to be false or reasonably should have known to be false.  Ms. Pilate repeatedly argues that the government's decision to move to disqualify her and to serve her with a trial subpoena was made in order to delay processing this case and to distract defense counsel from preparing for pretrial motions and trial.  Ms. Pilate suggests that Mr. Hathaway committed misconduct by failing to obtain the appropriate authorization for the trial subpoena, and by misrepresenting certain facts about the plane ticket defendant "reserved" on August 31, 2010.  Defendant presented evidence at the hearing that she did not purchase a plane ticket to Venezuela, as the government had previously suggested, and that the ticket inquiry or reservation had occurred hours before the government had informed Ms. Pilate that the Grand Jury would be meeting the next day.  Additionally, defendant argues that the government did not produce this exculpatory evidence of the Continental Airlines ticket inquiry, which would have permitted her to effectively challenge the government's "narrative and timeline," until after the Court ruled on the government's motion to disqualify.  Essentially, defendant accuses Mr. Hathaway of a pattern of misconduct in this case and asks that a range of sanctions be imposed on the government.  For a multitude of reasons, the Court does not find that sanctions are appropriate in this case.

Deliberate use of false testimony by a prosecutor violates a defendant's due process rights,[5] and constitutes a violation of KRPC 3.3.[6]  The Court finds that the government did not knowingly or recklessly misrepresent the circumstances surrounding the August 31, 2010

_____

[5]*Giglio v. United States.* 405 U.S. 150, 153 (1972).

[6]The standards for conduct of attorneys in this Court are found in the Kansas Rules of Professional Conduct ("KRPC"), as adopted by the Supreme Court of Kansas.  D. Kan. Rule 83.6.1.

Continental Airlines ticket inquiry. While the government did argue that the August 31 email from Mr. Hathaway to Ms. Pilate, indicating that the Grand Jury was meeting the next day, was important evidence from which to infer defendant's knowledge that an indictment was imminent, there was certainly more evidence than this lone email. In fact, the emails attached to the briefs on the motion to disqualify showed that the government communicated to defense counsel that an indictment was imminent in mid-August and that there was an August 30, 2010 deadline for Ms. Becker to accept a plea for this reason. While the government admits that it mistakenly suggested that the ticket may have been purchased based on information in the August 31 email, its motion to disqualify did not hinge on this representation. Nor is there any evidence that this representation was made knowing it was false, or with reckless disregard for whether it was true.

Also, the Court declines to attribute the government's decision to move to disqualify Ms. Pilate as a personal assault on her ethical obligations as a lawyer. The rules of professional responsibility make clear that opposing counsel may properly object when there is a potential that the opposing attorney may be required to serve as both an advocate and a witness.[7] And while it can obviously be misused, it is equally clear to the Court that in the criminal context, a district court

> must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.[8]

Thus, the Supreme Court has given district courts "substantial latitude in refusing waivers of

---

[7] KRPC 3.7 cmt. 2.

[8] *United States v. Wheat*, 486 U.S. 153, 162–63 (1988).

conflicts of interest" in favor of disqualification in cases where a potential conflict may exist.[9] To be sure, the government must have a good faith basis for pursuing a motion to disqualify, but there is no indication in the record that the government did not have such a good faith basis in this case. The fact that the government did not prevail on its motion is not dispositive. If success on a motion to disqualify was required, all attorneys would certainly be chilled from filing such motions when they suspect a potential conflict of interest. This is not the standard.

The Court clearly recalls explaining to Ms. Pilate at the hearing on the motion to disqualify that it had heard nothing that called into question Ms. Pilate's ethical obligations as a lawyer and the government confirmed that this was not its position. To be sure, the government routinely seeks to disqualify defense counsel when it appears that there may be a conflict of interest. A prosecutor in a criminal case shall not subpoena a lawyer "to present evidence about a past or present client unless the prosecutor reasonably believes . . . there is no other feasible alternative to obtain the information."[10] Mr. Hathaway maintained in his motion that Ms. Pilate's testimony was the only method of showing defendant's knowledge of the Grand Jury proceeding on September 1. It is clear to the Court that Mr. Hathaway reasonably held this belief, despite the fact that the Court ultimately found that defendant's knowledge could be shown by other evidence in the record.

Yet, the government is not blameless in the civility department. While the government may have been entitled to withhold discovery while the motion to disqualify was pending, the Continental Airlines record certainly would have been relevant evidence to present at the hearing on that motion; yet, the government chose to withhold this evidence until after that motion was

---

[9]*Id.* at 163.

[10]KRPC 3.8(e)(3).

11

resolved.

Ironically, the government asked the Court at the April 15 hearing, and again in a supplemental response, to pen an order in this case similar to one recently drafted in a civil case by Judge Eric Melgren, calling on a higher degree of professionalism and civility between opposing counsel.[11]  Assuming as true the facts described in defendant's supplemental brief on the motion for sanctions, after calling for a new era of civility in this case, Mr. Hathaway promptly withdrew a plea offer based on the unreasonable assertion that it is bizarre for a defendant to expect that she may consult with her counsel and investigator before making a decision with respect to a plea offer.  Defendant is well-aware that the Court is in no position to prohibit the government from withdrawing a plea offer,[12] nor does the Court wish to be involved in or aware of the details concerning any plea offer in a pending criminal case before it.  Yet, the Court would be remiss if it did not admonish the increasingly distasteful conduct by both counsel in this matter toward one another.  In the Court's view, the standoff between counsel in this case has become more about representing their own personal interests than their respective clients.  Rather than fan the flames of this standoff any further, the Court urges both attorneys going forward to act professionally and respectfully toward one another.  Such an approach is not mutually exclusive to zealously representing their clients; to the contrary, it is in their clients' best interests.

In sum, the Court finds no evidence of prosecutorial misconduct.  Any mistake made by the government in misconstruing the evidence of the Continental Airlines inquiry or reservation

---

[11]*Jayhawk Capital Mgmt., LLC v. LSB Indus.*, No. 08-2561-EFM, Order on Motion to Continue (Apr. 12, 2011).

[12]*See Weatherford v. Busey*, 429 U.S. 545, 561 (1977) ("there is no constitutional right to a plea bargain").

is harmless,[13] as there was sufficient evidence upon which it was entitled to argue that defendant reserved a plane ticket to Venezuela, armed with the knowledge that an indictment against her was imminent at the end of August 2010. The government was also entitled to argue, albeit unsuccessfully, that in order to establish defendant's knowledge of the Grand Jury session, it would be required to subpoena Ms. Pilate at trial. To the extent the evidence of flight is called into question by the codes on Exhibit 413, it goes to the weight and not the admissibility of the evidence. Defendant's motion for sanctions is denied.[14]

### B.    Motion for Discovery

Defendant alleges that while the government has produced some discovery, it has "cherry-picked" only evidence that is favorable to the government. Defendant contends that there are a significant number of additional documents in the government's possession that should be produced. In addition to exculpatory and impeaching evidence required under *Brady* and *Giglio*, defendant seeks witness statements, grand jury transcripts and summaries of expert opinions. The government opposes the motion, arguing that it has produced all evidence required under *Brady and Giglio*, that it will comply with the disclosure deadline in the Scheduling Order for Jencks Act materials, that it does not intend to call any experts, and that

---

[13]*See Bank of Nova Scotia v. United States*, 487 U.S. 250, 254–55 (1988) (holding that the court may not invoke its supervisory power and dismiss an indictment for prosecutorial misconduct that is not prejudicial to the defendant, circumventing the harmless error inquiry in Fed. R. Crim. P. 52(a)).

[14]Defendant's motion for sanctions suggests that there may be a Speedy Trial violation in this case. In support of her claim that dismissal is an appropriate sanction, she discusses the number of days that elapsed between the date of the government's first pleading seeking disqualification in November 2010 and the Court's Order denying the motion in January 2011. She maintains that none of this time is properly excludable. Defendant fails to mention that, in the interim, the Court made findings on defendant's motion that this is a complex case pursuant to 18 U.S.C. § 3161(h)(7)(ii), and that the ends of justice served by continuing the jury trial until June 14, 2011 outweighs the interest of the public and the defendant in a speedy trial (Doc. 76). And prior to that, the Court granted motions by defendant to continue the trial date in this matter, setting out detailed facts about why such continuances otherwise outweigh the interest of the public and the defendant in a speedy trial (Docs 17, 25, 39, 57). There are no grounds for finding that the Speedy Trial Act was violated in this case.

defendant fails to make the necessary showing for production of grand jury transcripts.

1.      ***Brady* Material**

Defendant argues that she reasonably believes the government is in possession of evidence that is exculpatory or "other evidence that relates to" a laundry list of subjects.[15]  The government responds that it is not aware of any evidence that exculpates the defendant and that it has produced all of the evidence produced to defendant Scott Becker's counsel in Case No. 09-40008.  The government further argues that it should not be required to respond to what amounts to interrogatories.

In her reply, defendant submits that the government should be required to examine its file and produce *Brady* and *Giglio* materials.  Namely, defendant seeks evidence about any inquiries into whether the Beckers had offshore bank accounts, evidence that the proceeds from the sale of land or antique firearms went to pay bills, rather than foreign bank accounts, and evidence that Mr. Becker had no knowledge of the government's investigation during the period of the alleged conspiracy, since 2003.  Finally, defendant complains that the discovery from Case No. 09-40008 is "enormous" and her investigator estimated at the hearing that it would take 200 hours to cull through it and locate discovery relevant to this case.

Under *Brady*, the prosecutor "has a duty to disclose material exculpatory evidence to the defendant."[16]  That means that the prosecutor must disclose information generally favorable to the defendant's defense or evidence that could be used to impeach government witnesses.[17]

---

[15](Doc. 103 at 5–8.)

[16]*United States v. Pedraza*, 27 F.3d 1515, 1527 (10th Cir. 1994).

[17]*United States v. Geames,* 427 F.3d 1333, 1336 (10th Cir. 2005).

14

Evidence is material in the *Brady* sense if it is relevant to the defendant's guilt or punishment.[18] When a witness's testimony may be the determinative factor in the defendant's guilt or innocence, disclosure of impeachment evidence is required under this rule.[19]   The prosecution's failure to provide *Brady* evidence violates the defendant's due process right even if done in good faith.[20]   But the government is not required to give defendants open file discovery of all evidence in the government's possession.[21]   Moreover, a defendant's mere speculation about the exculpatory nature or impeachment quality of evidence does not trigger an obligation to disclose under *Brady* or *Giglio*.[22]

The government maintains that it is not aware of any exculpatory evidence in this matter and understands it has a duty to produce evidence under *Brady* and *Giglio* and maintains that it has done so.   Defendant's argument that the government is in possession of such documents is merely speculative.   In fact, it was obvious from the witnesses' testimony at the April 15 hearing that defendant has not reviewed the bulk of what the government has produced in this case.   Mr. Conway testified that he has only reviewed 15% of the documents turned over by Mr. Becker's counsel in Case No. 09-40008, and he estimates that it will take 200 more hours to review those documents.   It is incongruous for counsel to argue both that the government has not produced documents and that so much discovery has been produced that she has not had the opportunity to

---

[18]*Id.*

[19]*Id.*

[20]*Pedraza*, 27 F.3d at 1527.

[21]*See United States v. Wright*, 43 F.3d 491, 496 (10th Cir. 1994); *United States v. Kister*, No. 97-40036-02-SAC, 1998 WL 982887, at *4 (D. Kan. Aug. 7, 1998) (stating that the prosecutor is not required to disclose his entire file to the defendant, only evidence favorable, that if suppressed, would deny the defendant a fair trial).

[22]*Kister*, 1998 WL 982887, at *4.

review.  The Court finds no basis in the record for determining that the government has withheld evidence in violation of *Brady* and *Giglio* and therefore denies defendant's motion on this basis.

### 2.    Rule 16 Discovery

Defendant requests identification of all material subject to discovery under Fed. R. Crim. P. 16, including expert witnesses that the government intends to call at trial and a summary of their intended testimony under Rules 702, 703, or 705.  The government responds that it has complied with Rule 16 and provided the marked exhibits it intends to introduce during its case-in-chief.  It further contends that it has complied with the continuing obligation for discovery of materials.  Furthermore, the government responds that it has produced all known statements of the defendant, all documents and tangible things the government intends to offer in its case in chief, and that it does not intend to produce expert testimony.

The Court's Scheduling Order[23] directs the government to, "within a reasonable time period after arraignment, and not later than 20 days before the motions deadline . . . comply with Rule 16."  The Scheduling Order further provides that "[p]ursuant to Rule 16(a), the government shall . . . permit the defendant to inspect and copy . . . [a] written summary of testimony the government intends to use under Rules 702, 703, or 705 . . . during its case-in-chief."  The government contends that it has already produced this evidence and that it does not intend to produce an expert. Therefore, defendant's motion is denied as moot.

### 3.    Jencks Act Discovery

Defendant asks that the government be required to produce this material early in the case in order to avoid delays at trial.  The government responds that it will abide by the Court's

---

[23](Doc. 6.)

Scheduling Order, which requires production at least 48 hours prior to the witness's scheduled appearance. The Court declines to amend the Scheduling Order and denies defendant's motion on this basis.

### 4.    Grand Jury Transcripts

Defendant seeks grand jury transcripts under Fed. R. Crim P. 6(e)(3)(E)(ii), because "a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury." The Supreme Court has explained that in order to obtain grand jury transcripts under this rule, the defendant "must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed."[24]

Defendant contends that this material is necessary because of: (1) the government's persistent and ongoing misleading statements regarding Ms. Becker's attempt to purchase an airline ticket; (2) the impossibility of a conspiracy between Scott and Brenda Becker in 2003 and 2004, before the start of any close relationship; (3) the lack of any "notice" to Mr. Becker of a possible federal indictment until sometime in 2008, thus removing any motivation for him before that date to engage in a fraud to defeat the government's interests of which he had no knowledge; (4) the placement of *lis pendens* on the Becker farmland, thus rendering it unavailable for liquidation to pay a private attorney; (5) the examination of the Beckers' finances by Magistrate Judge Sebelius and his conclusion, (not appealed by the government), that Mr. Becker was unable to afford a private attorney; (6) the lack of a legal duty, prior to Mr. Becker's conviction in Case No. 09-40008, to take or refrain from taking any particular actions with

---

[24]*Douglas Oil Co. of Cal. v. Petrol Stops NW*, 441 U.S. 211, 222 (1979).

regard to substitute assets; and (7) the lack of any ripened interest of the government in substitute assets until it has obtained a conviction.

Defendant has not shown the particularized need required under *Douglas Oil* to fall within Rule 6(e)'s exception to grand jury secrecy. Defendant's arguments belie the notion that she requires these transcripts to establish her defense or to properly support a motion to dismiss. For example, with regard to her argument that the government lacked a basis to allege that the conspiracy began in 2003, she states in the motion that her review of documents shows that the property transfers that are part of the alleged scheme to defraud the government occurred after the close of the FDIC investigation and before the criminal investigation began in 2008. She argues that there is no way that Mr. Becker knew that the government would open a grand jury investigation prior to that time. Defendant fails to explain how grand jury transcripts are necessary in order to establish this ground for dismissal of the Indictment.

Moreover, the existence of the *lis pendens* on the Becker farmland and Judge Sebelius' order denying reconsideration of appointment of counsel all provide adequate proof upon which defendant has filed her motion to dismiss the Indictment. It does not appear that defendant requires grand jury transcripts in order to make the arguments that the property was unavailable to the Beckers and that Judge Sebelius concluded that Mr. Becker was entitled to appointed counsel in 09-40008; indeed she forcefully makes these arguments in her motion to dismiss.

Moreover, defendant has not shown that her need for this evidence is greater than the need for judicial secrecy. The Court must consider "not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of future grand juries."[25] The Court

---

[25] *Id.*

is unable to find that her need for grand jury transcripts in this matter outweighs the need for judicial secrecy for this grand jury and future grand juries. Finally, the defendant has not shown that her request is structured in such a way to recover only a necessary amount of material. For all of these reasons, the Court denies defendant's motion for grand jury transcripts.

### C.    *Motion to Dismiss the Indictment*

Defendant moves to dismiss the Indictment on the following grounds: (1) insufficiency; (2) failure to state an offense as a matter of law; and (3) collateral estoppel. A party may raise by pretrial motion any issue that the court can determine without a trial on the general issue.[26] The Tenth Circuit has recently set forward the parameters for motions that may "implicate the general issue, but they present themselves for resolution before trial because they don't require a *trial* of the general issue."[27]

> So, for example, a court may always ask "whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offence" and dismiss the indictment if its allegations fail that standard. *United States v. Todd*, 446 F.3d 1062, 1068 (10th Cir.2006). Even if this question can be fairly said to implicate the general issue, it doesn't require a trial because it focuses solely on the facts alleged in the indictment and their legal adequacy. *See United States v. Sampson*, 371 U.S. 75, 78-80, 83 S.Ct. 173, 9 L.Ed.2d 136 (1962). Of course and likewise, courts may entertain motions that require it to answer only pure questions of law. *See, e.g., Covington*, 395 U.S. at 60, 89 S.Ct. 1559; *Serfass v. United States*, 420 U.S. 377, 382, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975); *see also Wright & Leipold, supra,* § 191, at 392-93. And, we have held, courts may entertain even motions to dismiss that require resort to facts outside the indictment and bearing on the general issue in the "limited circumstances" where "[1] the operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts," and [3] the district court can determine from them that, " as a matter of law, the

---

[26]Fed. R. Crim. P. 12(b).

[27]*United States v. Pope*, 613 F.3d 1255, 1260 (10th Cir. 2010).

government is incapable of proving its case beyond a reasonable doubt." *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994).[28]

### 1.     Sufficiency of the Indictment

### a.     Conspiracy, Wire Fraud, and Money Laundering Counts

Defendant argues that these counts fail as a matter of law because they depend on the existence of a fraud.  According to defendant, because she was under no legal duty to take or refrain from taking any action with respect to the identified property in these counts, there can be no unlawful act or agreement.   Defendant points to this Court's order lifting the *lis pendens* on that property—identified as substitute assets in Case No. 09-40008—as evidence that the government had no interest in the property at the time the alleged scheme to defraud took place. Because there is no valid claim of fraud, defendant argues that the wire fraud and money laundering charges also fall.

The government responds that the Indictment is valid on its face and that the fraud covered by 18 U.S.C. § 371 reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government.  Here, the government alleges that defendants defrauded the government by impairing the Department of Justices's collection of future fines, forfeitures, and restitution.  The government also points to co-defendant Mr. Becker's plea agreement that admits in the factual basis that he and Brenda systematically liquidated, transferred, and concealed his assets and residence in order to defraud the government. Finally, the government argues that defendant's argument is merely a factual defense to the crimes charges in the Indictment.

---

[28]*Id.* at 1260–61.

The fact that the property allegedly liquidated and concealed was not directly forfeitable property in Case No. 09-40008 does not preclude charges that the dissipation of those assets was part of the scheme to defraud. While it is true that the *lis pendens* in Case No. 09-40008 was improper under controlling law in this Circuit, it does not defeat the government's allegations that Mr. Becker, aided and abetted by Ms. Becker, began the process to liquidate, transfer and conceal the same assets beginning in 2003 for the purpose of defrauding the government. While this Court certainly held in Case No. 09-40008 that pretrial restraint of those assets was not appropriate given their status as substitute assets, the Court never held that they may not ultimately be held forfeitable as substitute assets. The government alleges in this case that this very finding is what the Beckers sought to avoid by liquidating, transferring, and concealing the assets. Defendant's argument amounts to an explanation of her defense, not to the sufficiency of the Indictment.

### b.      Perjury Counts

Defendant argues that these counts fail because there is no allegation that she made any of the statements referenced or that she was present when they were made; all of the statements were made by Mr. Becker. The government does not respond to this argument.

The perjury charges in Counts 2 and 3 allege that both defendants committed perjury by claiming that defendant Scott Becker had no real or personal property and was indigent and, thus, entitled to appointment of counsel. Count 4 charges this defendant under a *Pinkerton*[29] theory for Mr. Becker's testimony at the detention hearing before Judge Sebelius that the financial affidavit he signed was true and correct. Counts 2 and 3 of the Indictment charge both defendants with

---

[29]*See Pinkerton v. United States*, 328 U.S. 640, 647 (1946) (establishing doctrine that each member of a conspiracy is legally responsible for the reasonably foreseeable crimes of fellow conspirators committed in furtherance of the conspiracy).

perjury using the language of the applicable statute, 28 U.S.C. § 1746. "It is generally sufficient that an indictment set forth an offense in the words of the statute itself, as long as those words themselves fully, direct, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished."[30]  Under this standard, the Indictment is sufficient.  Count 4 sets out the statutory language applicable and explicitly states that this defendant is being charged under a *Pinkerton* theory of liability.  This is sufficient under the liberal standard applicable to the Court's review of the Indictment for sufficiency.

  2.  **Failure to State a Claim**

  Defendant argues that the government's "position" in this case, compared to Case No. 09-40008, defeats its charge for conspiracy to interfere with and obstruct the lawful function of the government to appoint counsel for the indigent.  Defendant points to the fact that the government improperly encumbered the very substitute assets in that case that it complained defendant failed to liquidate for the purpose of paying legal fees.  The government responds that this is simply a defense to the allegations in the Indictment that must be decided by a jury.

   The fact that many of Mr. Becker's assets were encumbered, preventing him from using their proceeds to retain counsel, does not preclude charges that he dissipated or concealed his assets to obtain appointed counsel as part of the object of the conspiracy to defraud the government.  This is an issue that will go to the general issue of liability—whether defendants conspired to defraud the government by liquidating and concealing assets for the purpose of obtaining court appoint counsel, or whether the Beckers only obtained court appointed counsel because their only assets were otherwise encumbered.  Defendant's arguments amount to a factual

---

[30]*United States v. Hathaway*, 318 F.3d 1001, 1009 (10th Cir. 2003).

defense to the charges in the Indictment and not a basis for dismissal.

### 3.    Collateral Estoppel

Defendant points to Judge Sebelius' Order ruling on the government' motion to reconsider appointment of counsel in 09-40008,[31] as conclusive that defendant had insufficient funds to obtain counsel.  She argues that this order is "functionally the 'law of the case,'" and that this decision should be given preclusive effect.

Judge Sebelius' Order is not law of the case because it was decided in a different case. The doctrine of collateral estoppel in a criminal case is part of the Fifth Amendment's Double Jeopardy Clause and only applies "insofar as it is necessary to safeguard against the risk of double jeopardy."[32]  In order for collateral estoppel to apply, the Double Jeopardy clause must have been triggered.[33]  "When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit."[34]  Judge Sebelius' Order pertained to Mr. Becker in Case No. 09-40008 and not to Brenda Becker, so collateral estoppel does not apply.  Moreover, that order does not preclude a charge of conspiracy to defraud.  Judge Sebelius determined that, based on the information before him, Mr. Becker did not have the resources to afford an attorney.  Under the government's theory of this case, that is precisely the finding Mr. Becker hoped for when he dissipated or concealed his assets prior to the Indictment in that matter.  The Court denies defendant's motion on the basis of collateral estoppel.

---

[31]*United States v. Becker*, Case No. 09-40008, Doc. 106 (Feb. 11, 2010).

[32]*Smith v. Dinwiddie*, 510 F.3d 1180, 1187 (10th Cir. 2007) (internal quotation omitted).

[33]*Id.*

[34]*Id.*

## 4.    Void for Vagueness

In her reply brief, defendant raises for the first time an argument that the conspiracy statute, 18 U.S.C. § 371, is void for vagueness as applied to this case.  To satisfy due process, "a penal statute [must] define the criminal offense [1] with sufficient definiteness that ordinary people can understand what conduct is prohibited and [2] in a manner that does not encourage arbitrary and discriminatory enforcement."[35]  "The touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal."[36]  Defendant argues that nothing in the statute or the case law interpreting it made it reasonably clear that the behavior charged in this Indictment is criminal.

Under 18 U.S.C. section 371,

> [i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both.

The Indictment charges defendants under both the offense and the defraud clauses.  The Supreme Court has explained the meaning of "conspiracy to defraud" as follows:

> To conspire to defraud the United States means . . . to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest. It is not necessary that the Government shall be subjected to property or pecuniary loss by the fraud, but only that its legitimate official action and purpose shall be defeated by misrepresentation, chicane, or the overreaching of those charged with carrying out the

---

[35]*Skilling v. United States*, 130 S. Ct. 2896, 2927–28 (2010) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

[36]*United States v. Lanier*, 520 U.S. 259, 267 (1997).

governmental intention.[37]

"A statute can be unambiguous without addressing every interpretive theory offered by a party. It need only be 'plain to anyone reading the Act' that the statute encompasses the conduct at issue."[38]

The Indictment sets forth the scheme and the conspiracy, listing the overt acts that the government contends affected the object of the conspiracy. The scheme is alleged to have involved the overt acts listed in paragraph 6 in order to defraud the United States of and concerning its government functions. Moreover, the Indictment alleges that after the Indictment in Case No. 09-40008 was returned, defendants began a pattern of lies and deceit that was perpetrated to create the false pretense that Mr. Becker had no real property or assets and that he was entitled to court-appointed counsel.

Assuming as true the facts set forth in the Indictment, Mr. Becker became aware of the fact that the Federal Bureau of Investigation was brought in to investigate the criminal activity of him and others and knew by virtue of that fact he could be subjected to imprisonment, fines, forfeitures and restitution. In furtherance and execution of this conspiracy, the defendants and others at their direction, committed overt acts to affect the object of the conspiracy including: (1) purchasing a "fully managed corporation" in the country of Panama for the sole purpose of liquidating and transferring assets owned and controlled by Mr. Becker in "increments of $75,000 to $100,000" to offshore accounts; (2) obtaining Nevada driver's licenses, falsely claiming to be residents of the State of Nevada; (3) forming a Nevada corporation "Mt. Bethel Enterprises, LLC" to be owned and controlled by the Beckers through their ownership of Phoenix Holdings Group,

---

[37]*Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924).

[38]*Salinas v. United States*, 522 U.S. 52, 60 (1997).

S.A. (Panama), which would act as a holding company in the United States to park real estate and personal property owned and controlled by Mr. Becker until property could be sold and the proceeds moved offshore; (4) opening an account at Bank of America in Nevada for Mt. Bethel Enterprises, LLC, as a repository for proceeds obtained from the sale of assets to defeat the functions of the United States government; and (5) purchasing a Yacht for $265,000 through Phoenix Holdings Group, S.A. (Panama), for the purposes of absconding from the United States.

The Indictment further alleges that on February 25, 2009, Mr. Becker was arrested on a federal warrant in Pensacola, Florida, commencing a pattern of lies and deceit perpetrated by the defendants against pretrial services officers, federal court personnel and state and federal judges in an effort to create the false pretense that Mr. Becker was an individual who possessed no real or personal property or other assets, was entitled to court appointed counsel and was incapable of satisfying any fines, forfeitures or restitutions.

Defendant argues that the statute is vague because defendants could not have been on notice that their legal acts of reconstituting their assets prior to the Indictment in Case No. 09-40008 would be unlawful. But "it is well settled that acts which are in themselves legal lose that character when they become constituent elements of an unlawful scheme."[39] Given the Indictment's allegations that the Beckers' scheme to defraud was carried out with knowledge of the investigation and impending charges in Case No. 09-40008, the Court declines to find that the plain and ordinary meaning of § 371 does not reach the Beckers' conduct, as alleged in the Indictment.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion to Dismiss

---

[39]*Continental Ore Co. v. Union Carbid & Carbon Corp.*, 370 U.S. 690, 707 (1962); *see also United States v. Cueto*, 151 F.3d 620, 635–36 (7th Cir. 1998) (denying as-applied challenge to 18 U.S.C. § 371 as void for vagueness).

Case, or, Alternatively, for Other Sanctions Based on the Presentation of Misleading Information to the Court and Failure to Produce Relevant Discovery (Doc. 101), as supplemented (Doc. 126) is **denied**;

**IT IS FURTHER ORDERED** that defendant's Motion for Discovery under *Brady v. Maryland*, Rule 16, The Jencks Act and for Grand Jury Transcripts (Doc. 103) is **denied**;

**IT IS FURTHER ORDERED** that defendant's Motion to Dismiss Counts Based on Insufficiency of the Indictment, Failure to State an Offense, and Collateral Estoppel (Doc. 104), as amended (Doc. 107), is **denied**.

**IT IS SO ORDERED.**

Dated: <u>May 4, 2011</u>

                                                    <u>S/ Julie A. Robinson</u>
                                                    JULIE A. ROBINSON
                                                    UNITED STATES DISTRICT JUDGE